# THE LAW OFFICE OF HARLEY D. BREITE
562 Black Oak Ridge Road
Wayne, N.J. 07470
Office- 973-872-0604

Cell Phone- 973-714-6733                                   Email- harleydbreite@aol.com
Member - N.Y., N.J., PA & DC Bar        LL.M. (Master of Laws) in Trial Advocacy

March 20, 2023

Hon. Carl Nichols, U.S.D.J.
United States District Judge
United States District Courthouse
333 Constitution Avenue NW
Washington, D.C. 20001

Re: United States of America vs. Shawn Price
    Docket No.: 0090 1:22CR00106-001

## DEFENDANT'S SENTENCING MEMORANDUM

Dear Judge Nichols,

    I respectfully request that Your Honor consider this submission on behalf of my client, Shawn Price, in connection with his Sentencing Hearing scheduled for Monday, April 03, 2023 at 11:00 am.

    For the reasons set forth herein, the Defense respectfully implores the Court to grant the Defendant a variance and find that a non-custodial sentence is most appropriate.

## PROCEDURAL HISTORY

    On June 8, 2021, Shawn Price, the Defendant was peacefully arrested and made an Initial Appearance in the U.S. District Court for the District of New Jersey where he was released on bond. On June 16, 2021, the Defendant appearing before the U.S. District Court for the District of Columbia was placed on a personal recognizance bond with pretrial services.

    It is no secret that the Defendant, at times, struggled with drug addiction as well as prescribed medicines, which led to reported violations. None of those violations rose to the level of terminating Defendant's pre-trial liberty. In October 2021, while out on bond, Defendant completed a detox program at Saint Claire's Hospital. The Defendant subsequently attended three-time weekly individual and group sessions while at the Atlantic Behavioral Healthcare Facility for Intensive Outpatient Program (IOP) services.

    The Defendant does have a pending criminal matter in the Passaic County Superior Court before The Honorable Justine Niccollai, J.S.C. in which he is

1

charged with a single count of Possession of a Controlled Dangerous Substance back from September 29, 2021.  Assistant Prosecutor Jessica Kalafut and I have already agreed that in return for a guilty plea on April 21, 2023, the State will recommend a non-custodial sentence to which Judge Niccollai has already given her blessing.

On March 30, 2022, an indictment was returned in the U.S. District Court for the District of Columbia charging the Defendant with the following crimes:
1. Civil Disorder in violation of Title 18, U.S.C., Section 231(a)(3).
2. Entering and Remaining in a Restricted Building or Grounds in violation of Title 18, U.S.C., Section 1752(a)(1).
3. Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of Title U.S.C., Section 1752(a)(2).

The criminal conduct charged in the Indictment occurred on or about January 6, 2021 as part of what has been commonly referred to as "The Capitol Riot Cases."

On October 14, 2022, the Defendant pled guilty to Count One of the Indictment pursuant to a written plea agreement and Rule 11(c)(1)(B).  The Defendant understands that a conviction of Count One carries a maximum sentence of five (5) years imprisonment, a term of supervised release of not more than three (3) years, a fine of Two-Hundred and Fifty-Thousand Dollars ($250,000) or twice the pecuniary gain or loss form the offense, and an obligation to pay any applicable interest or fines on restitution not made in a timely manner.  The Defendant further agrees to pay a One-Hundred Dollars ($100.00) special assessment per felony conviction.

According to PSADC reports, as recently as November 28, 2022, the Defendant has been in full compliance.  The Defendant also submitted to a negative drug test.  Furthermore, the Defendant graduated from IOP treatment at Recovery Centers of America on October 25, 2022.

The Presentence Investigation Report produces a United States Sentencing Guidelines ("Guidelines") totaled adjusted offense level of 11.  The U.S. Probation Office, the Government and the Defense agree that the Defendant's criminal history is Category 3.  Given the Defendant's total adjusted offense level of 11, including the Defendant's acceptance of responsibility, the Guidelines suggest a custodial sentence ranging from 12 to 18 months.  The Plea Agreement calls for an agreement on the calculation of this range but permits the Defense to argue for a downward variance based upon the factors set forth in 18 U.S.C. Section 3553(a).

### A.  Nature and Circumstances of the Offense

The January 6, 2021 attack on the U.S. Capitol was inarguably a criminal

2

manifestation of the political divide of the United States of America.  However, the Defense respectfully disagrees with the Government's previous assertion that, as a criminal offense, it is "unparalleled in American history."  This country, founded upon the principles that a corrupt government is no government at all, stands for the premise that the citizenry is ultimately entrusted to ensure that democracy prevails.  The American Revolution was just that and through this country's entire history, political demonstration, often violent in nature, has marked important epochs in the growth of this country.  And while that in no way is meant to condone the actions of my client on January 6, 2021, there is however, a long history of recognizing the need for forgiveness towards those who transgress the law while protesting federal authority.  It was then President George Washington himself who pardoned the only two men found guilty of treason in The Whiskey Rebellion of 1794.

There appears to be a great deal made of the Defendant's membership in the Proud Boys organization although there is nothing illegal in maintaining such membership.  The Proud Boys were founded in 2016 and remained outside the general public's attention up and until the Capitol Riot incident on January 6, 2021.  The Defendant was never convicted, let alone arrested, for any illegal conduct associated with any proposed Proud Boys agenda.  Hidden from the general public are the actual charitable acts performed by some Proud Boys.  Mr. Price has a long history of helping those even less fortunate than himself by raising money for the homeless and collecting clothes for those in need.  To condemn literally all members of an unpopular group and ignore both sides of the proverbial coin is contrary to the basic tenets of democracy on which this country was built.

The Defendant quickly accepted responsibility for his actions and fully admitted that he did, in fact, enter the restricted portion of the Capitol grounds at the lower west terrace.  As to the issue of when he breached the Capitol, he certainly was not the first person to do so nor was he alone.  The Defendant did not throw anything at anyone nor did he inflict any physical harm onto another.  The Defendant did not bring with him or at any time whatsoever take possession of any type of weapon.  This clearly demonstrates that when Mr. Price left New Jersey that same morning for Washington, D.C., he had no intent to commit violence upon any person.  It is true that the Defendant filmed some of what transpired and uttered curse words at law enforcement officers.  It is also true that the Defendant "**pushed** with a group of individuals into a line of law enforcement officers that was attempting to restrain the crowd and to hold crowd-control barriers in place" (Presentence Investigation Report- p. 9 but emphasis added by Defense Counsel).  The Defendant never physically assaulted any person nor ever attempted to do so.  I would ask the Court to consider that the Defendant was not part of any action that kicked open doors or shattered windows in order to gain entry.

Chief Judge Howell enumerated specific considerations to differentiate the severity of the behavior amongst the hundreds of defendants affiliated with the January 6, 2021 events at the Capitol.  See United States v. Chrestman, - - F. Supp. 3d – 2021 WL 765662, at *7 (D.D.C. Feb 26, 2021) (Howell, C.J.).  The

3

second of those considerations is whether the defendant "engaged in prior planning before arriving at the Capitol." Here, it is clear that Mr. Price, although traveling with other members of the Proud Boys, arrived at the Capitol unarmed and without any premeditation to commit any violence and remained unarmed. There is no indication of any premeditation or even plans to enter the Capitol premises.

Another consideration of Chief Judge Howell is whether the Defendant engaged in violence or incited violence. The Defense contends that the Defendant's mere "pushing" of a barrier line without assaulting a single person should not be deemed "violence" and that if the Defendant's shouting words are construed as inciting violence, that act is given little to no serious weight given it's de minimis nature and overall effect.

Chief Judge Howell also considered whether the Defendant engaged in any acts of destruction. In the case at bar, there appears no evidence that the Defendant engaged in any acts of destruction.

Chief Judge Howell went further in examining Defendants' reactions to acts of violence or destruction. Here, the Government is asking the Court to engage in speculation rather than draw reasonable inferences. Unless one were to take a substantial step to commit a crime, merely expressing one's reaction to anything, including acts of violence or destruction committed by others, is not a crime. In fact, one could argue the First Amendment protects any such expression. One could wonder as to why so much of these "Capitol Riot" cases focus on political ideology. The fact is that people died and others were seriously injured. More important than which lever one pulls inside a voting booth is the attention we should now pay in assessing just how far one can assemble, speak out and actually act out. What a person says is very often quite different from what a person does or is even willing to do. For example, the Defendant's Facebook claim that same day that "I led the storm!" is evidence of his immaturity and braggadocio. Mr. Price's need for validation and acceptance was ill placed and poorly sought. It is clear that today's Mr. Price is a much more mature, thoughtful, and informed person that the 26-year old who arrived at the Capitol on January 6, 2021. There are no social media rants, video clips or photographs to suggest otherwise. But if the Government were to ask this Court to subscribe, with any certainty, the intent of a person from just one video or photo or excerpt from social media it would be akin to suggesting that we can actually know and predict future behavior from that one quick image or statement. The Court should give little to no weight to any of those extraneous exhibits offered by the Government from that day.

Chief Judge Howell considered whether during or after the riot, the defendant destroyed evidence. Clearly, Mr. Price did not destroy any evidence or he would have been accordingly charged with a crime. Mr. Price never once obstructed justice as evidenced by his polite engagement with all law enforcement agents, probation personnel and, court personnel.

An extremely important distinguishing factor Chief Judge Howell considered was the length of a defendant's time inside the Capitol Building and exactly where the defendant traveled. Mr. Price never once entered the Capitol

Building. He did not permit himself to be swept up by any incoming stream of rioters. Consequently, there can be no dispute that Mr. Price never harmed anyone nor sought to harm anyone who was inside the Capitol Building. In fact, within a very short period of time, Mr. Price ignored the crowd, turned back and exited against the surging mass of protestors and returned to his home in New Jersey.

Chief Judge Howell considered statements a defendant made either in person or on social media. The Government would raise a very sensitive issue in asking this or any Court to punish a Defendant for unpopular speech. This is not the time nor place to exhaustively argue the First Amendment. The Defense asks Your Honor to ignore excited and exaggerated boasts and political positions expressed by Mr. Price on what appear to be only January 6, 2021 and not thereafter. We ask that Your Honor more heavily weigh the Defendant's past history and what he did since that that day, January 6, 2021. What the Defendant may have said or displayed on social media that day neither harmed anyone nor amounted to a crime so it should not be given any weight in the Court's decision in sentencing the Defendant. Frankly, it speaks more to the Defendant's immaturity, inability, and refusal to acquire honest, objective information devoid of politically partisan agenda.

Chief Judge Howell also considered whether a defendant cooperated with or ignored law enforcement. Given Mr. Price's lack of planning or intent to cause any violence as well as his relatively benign actions that day, there was no interest from the Government to speak with Mr. Price and therefore, no opportunity for him to cooperate with law enforcement.

Another consideration examined by Chief Judge Howell is whether the defendant exhibited evidence of remorse or contrition. Mr. Price has from that very day, demonstrated sincere remorse for his actions on January 6, 2021. As noted in the Presentence Investigation Report, "Defendant Price left before the city was closed down and was last seen at home and in shock for weeks. The defendant apologized for the events that occurred that day and feels "deep sadness" for what should have been a peaceful day for Americans to use their words instead of violence. Although the defendant had not planned to be part of such a day, the defendant deeply apologizes on behalf of anyone there and anyone/everyone hurt that day" (p. 10). The remorse expressed by Mr. Price is unquestionably sincere. He has repeatedly acknowledged the tremendous shame he brought onto himself and his family.

It is important to recognize that Mr. Price has never transferred any blame or responsibility onto the media, but rather, honestly accepts his responsibility for accepting the beliefs he chose to espouse. Just as it should not be difficult for anyone today to believe that a person could be informationally- manipulated by media outlets, it should also not be difficult to believe that such a person can undergo a change of heart in their belief systems. Mr. Price has undergone that change through reflection, therapy, and objective learning.

### B. The History and Characteristics of the Defendant

**Defendant's Background**

In assessing Mr. Price's history and characteristics for purposes of sentencing, the Court could look at some of the previously established criteria used during detention hearings. The Court, under its own discretion, can consider the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings." 18 U.S.C. Section 3142(g)(3)(A).

Shawn Price is 28-years old and has lived in New Jersey his entire life.

Eight years ago, Mr. Price personally witnessed his 42-year old father die from a Xanax and Oxycodone overdose. Mr. Price's pre-existing dependency on drugs was exacerbated by his inability to properly deal with the loss of his father. The Defendant's parents had separated a year before his father's overdose due to the physical abuse his father dispensed upon the Defendant, his mother, and his two younger sisters. The Defendant maintains a loving relationship with his mother who lives close by.

Since the time of his arrest, despite the extremely difficult employment opportunities posed during the COVID-19 pandemic, the Defendant has remained steadily employed. Two years ago, Defendant began work at Quality Discount Tire in Ledgewood, New Jersey as a Tire Technician. Through discipline and hard work, he has become the Shop Foreman and is an integral part of the business. The Defendant earns $18.50 per hour.

The Defendant provided a negative drug test within the previous two weeks and attends Narcotics Anonymous meetings three times per week. The Defendant has a sponsor named Enzo Magloria.

Subsequent to his arrest, Defendant extricated himself from any affiliation with the Proud Boys. The Defendant has continued his charitable efforts by committing to volunteer demolition work for the elderly who suffered during recent floods and a hurricane. Mr. Price was responsible, in part, for donating $2,000.00 worth of food to the Weekend Bag Program in Newton, New Jersey in an effort to help feed young school children. The Defendant also continues to donate clothing throughout northern New Jersey.

In November 2022, after a two-year relationship, the Defendant proposed marriage to Victoria Leigh Schinzel with whom he lives in Hackettstown, New Jersey. Their rent is $1,400.00 per month. Miss Schinzel is 28-years old and is employed as an Office Manager at JC Daughters Towing, a towing company in Ledgewood, New Jersey. She earns $600.00 per week.

The couple is expecting the birth of their first child, a daughter, on or about June 11, 2023. Unfortunately, Miss Schinzel is not in the best of health. She suffers from Borderline Personality Disorder and Post Traumatic Stress Disorder from the passing of her first child and also having been the victim of sexual abuse at the age of 9-years old. Additionally, Miss Schinzel has been diagnosed

6

with a brain tumor that is not yet operable. A slight difficulty has arisen during her pregnancy, which requires the Defendant himself to inject prescribed medicine to Miss Schinzel every day. It is clear that the Defendant and his fiancee are quite dependent upon one another for both their own respective stability as well as that of their future child. Mr. Price has meet all of these adult responsibilities with great maturity, reliability, and compassion. There can be no greater incentive for a man to keep his job, remain drug free, and avoid any further involvement with the criminal justice system than knowing his wife and child depend upon him to continue to provide for them and to remain a productive member of society.

Any assertion that my client traveled to the Capitol prepared to commit violence is unfounded. There is no evidence that my client had any plan or that he took premeditated steps to commit violence at the Capitol. My client did not travel with nor bring any weapon to the Capitol. There is no evidence that he struck or attempted to strike anyone. My client never once sought to conceal his identity. If intent to commit a crime may be inferred from one concealing their identity, then the fact that my client never once concealed his face should be used to infer that my client lacked any intent to violate any law. The Defendant took no steps in anticipation of any violence to be committed against Congress.

During the life of these Capitol Riot cases, Judge Bates in an April 12, 2021 detention hearing opinion differentiated between defendants who assaulted officers and engaged in planning activities and those defendants who assaulted police officers but did not engage in planning activities. The later, Judge Bates noted, in several cases, were released without objection from the government (<u>United States of America v. Federico Guillermo Klein,</u> (Crim. No. 21-236 (JDB)). Following that line of thinking, Mr. Price can be seen as deserving of more leniency in his sentence from the Court than perhaps others who not only planned illegal activities, but also, committed an assault upon a police officer. Neither of these can be attributed to Mr. Price.

Mr. Price poses no continued articulable threat to anyone or the community. He has demonstrated sincere remorse as well as a willingness to become part of the remedy to the problems that contributed to the events of January 6, 2021 as evidenced by his continuous employment and the massive strides taken to better himself and his growing family.

The Defense beseeches the Court to grant the Defendant a variance and consider a sentence below the applicable guidelines range bases on factors to be considered in imposing sentence pursuant to 18 U.S.C. Section 3553(a).

If the Defendant were to receive a non-custodial sentence, he could return home to a job, which enables him to support his future wife and expected daughter. A non-custodial sentence would also mean that the Defendant could continue to aggressively address his drug problem, remain drug free, and end the cycle of drug abuse passed on throughout his family.

It is clear that Mr. Price is not a danger to the community. Mr. Price has most definitely learned the error of his ways and understands what led him to make such poor decisions surrounding the events of January 6, 2021. He is sincerely remorseful and will never repeat the crime to which he pled guilty. Mr.

Price has a family providing strong support for his return as a law-abiding and productive member of society.

Based upon the factors and arguments set forth above, Mr. Price most respectfully implores the Court to grant a variance and sentence him to a non-custodial sentence.

Respectfully submitted,

Harley D. Breite, Esq.

cc: AUSA Michael Gordon